UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 12-CV-662 (JFB)(ARL)
_____

FRESH PICK NY INC.,

Plaintiff,

VERSUS

DOVER GOURMET CORP. AND BUTCH YAMALI,

Defendants.
_____

**MEMORANDUM AND ORDER**
September 5, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Fresh Pick NY Inc. ("plaintiff" or "Fresh Pick") brought this action against Dover Gourmet Corp. ("Dover") and Butch Yamali ("Yamali") (collectively, "defendants") alleging that defendants violated the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et. seq.* ("PACA"), as well as New York State law. Specifically, plaintiff claims that defendants failed to pay for $27,051.45 worth of wholesale produce.

Defendants now move for summary judgment and plaintiff cross-moves for summary judgment, both pursuant to Federal Rule of Civil Procedure 56. Because the Court finds that defendants are not subject to PACA, the Court grants defendants' motion for summary judgment as to the federal claims and denies plaintiff's motion for summary judgment as to the federal claims. The Court declines supplemental jurisdiction over the state law claim.

I. BACKGROUND

A. Facts

The Court has taken the facts described below from the parties' affidavits, exhibits, and Local Rule 56.1 Statement of Facts.

Dover operates and maintains coffee shops and restaurants. (Defs.' 56.1 ¶¶ 1, 4.) Dover buys fresh produce from wholesale vendors and then prepares that produce into food that is sold directly to consumers. (*Id.* ¶¶ 5-6.) According to the undisputed affidavit of Yamali, Dover's president and sole shareholder, Dover has never purchased more than $230,000 of produce in any calendar year. (Aff. of Butch Yamali ("Yamali Aff.") ¶ 16.) During 2010, Dover's total produce purchases totaled $19,520.98, while in 2011 Dover purchased $70,035.25 of produce. (*Id.* ¶¶ 14-15.)

Fresh Pick sells wholesale quantities of produce. (Pl.'s 56.1 ¶ 1.) Between July 29,

2011 and January 2, 2012, plaintiff sold and delivered $27,051.45 worth of produce to Dover, for which defendants have failed to pay. (*Id.* ¶ 4; Compl. ¶¶ 6-7.) Defendants contend that they did not pay for the produce because it was "mostly unusable" and some of it contained mold. (Yamali Aff. ¶ 18.)

### B. Procedural History

Plaintiff filed the complaint in this action on February 10, 2012. Defendants answered the complaint on April 16, 2012. On September 28, 2012, defendants filed a motion for summary judgment. Plaintiff filed a cross-motion for summary judgment on October 26, 2012. Defendants filed their opposition to plaintiff's motion and a reply in support of their motion on November 9, 2012, and plaintiff filed its reply on November 21, 2012. The Court held oral argument on December 5, 2012. The Court has fully considered the submissions of the parties.

### II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal citation and quotation marks omitted).

Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal citation and quotation marks omitted).

### III. DISCUSSION

#### A. PACA

##### 1. Applicable Law

"Congress enacted PACA in 1930 to regulate commerce in perishable agricultural commodities . . . ." *In re Kornblum & Co.*, 81 F.3d 280, 283 (2d Cir. 1996). "The Act established a mandatory licensing scheme, under the supervision of the Secretary of Agriculture, for dealers, brokers, and commission merchants of perishable agricultural commodities, and prohibits certain unfair practices in the trading of such commodities." *Id.* (internal citations omitted). "The Act was designed primarily for the protection of the producers of perishable agricultural products – most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing." *Id.* (citation and internal quotation marks omitted).

PACA makes it unlawful for "any commission merchant, dealer, or broker . . . to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had . . . ." 7 U.S.C. § 499b(4). The Act defines dealer as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." *Id.* § 499a(6). However, PACA explicitly states that "no person buying any such commodity solely for sale at retail shall be considered as a 'dealer' until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000." *Id.* § 499a(6)(B).

##### 2. Application

Defendants argue that Dover is not a dealer covered by PACA because it has never purchased more than $230,000 of produce in any calendar year.[1] For the reasons set forth below, the Court agrees.

First, restaurants and other food preparation businesses are covered by PACA if they purchase wholesale quantities of produce, and purchase more than $230,000 of produce in any calendar year. Although the United States Department of Agriculture "has indicated its view that restaurants are not 'dealers' under that statute," *In re Magic Rests., Inc.*, 205 F.3d 108, 114 (3d Cir. 2000), three Courts of Appeals have held that the statute is clear that the definition of dealers in PACA encompasses restaurants, *see id.* at 117 ("[W]e are constrained by PACA's unambiguous statutory language to hold that a restaurant such as Magic, which purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year), is a 'dealer' under 7 U.S.C. § 499a(b)(6), and administrative interpretations contrary to this plain language are therefore not persuasive."); *see also Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1107

---

[1] Although PACA also applies to other categories of businesses, plaintiff does not argue that any other classification applies to defendants.

3

(9th Cir. 2001) (holding that "a restaurant that buys the requisite quantities of perishable agricultural commodities as part of its business is a 'dealer' even if the commodities are used only in the commercial preparation of meals instead of being resold in unprocessed form"); *In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 426 (8th Cir. 2001) ("We find the court's reasoning [in *Magic Restaurants*] persuasive and adopt it."). This Court agrees with these cases from other circuits and finds them persuasive.

Plaintiff does not dispute than Dover purchases less than $230,000 of produce in any calendar year. Instead, plaintiff argues that Dover is not exempt from the definition of dealer because that exception only applies to dealers that buy the commodity "solely for sale at retail" and Dover, as a restaurant, does not sell the produce in its unaltered form. According to plaintiff, by purchasing and transforming the produce into a meal to be sold to consumers, defendants cannot satisfy the exception in the statute. (*See* Pl.'s Mem. at 14 ("Both a tomato and a piece of lasagna are forms of 'food,' but only produce in its original form, not cooked, adulterated or otherwise altered which is sold at retail, as opposed to in meals at restaurants, qualifies for the $230,000 per year exemption claimed by defendants.").)

In analyzing this issue, the Court relies on the plain meaning of the statutory language. According to the Supreme Court, "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations and internal quotation marks omitted); *see also Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther."); *Green v. City of N.Y.*, 465 F.3d 65, 78 (2d Cir. 2006) ("Statutory analysis begins with the text and its plain meaning, if it has one. Only if an attempt to discern the plain meaning fails because the statute is ambiguous, do we resort to canons of construction. If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history.") (citations and internal quotation marks omitted); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous.") (internal citations omitted).

Plaintiff's theory that restaurants cannot use the $230,000 exception because they alter the produce has no support in the plain meaning of the statutory text. The phrase "solely for sale at retail" does not comment or even allude to a requirement that the produce must remain unaltered. Plaintiff's interpretation would lead to the conclusion that a small grocery store (i.e., purchases less than $230,000 of produce per year) would be subject to PACA's regulations if it sells unaltered produce but also uses some of the lettuce and tomatoes to make sandwiches at a deli counter, an absurd result that the statute clearly did not intend. Instead, the statute unambiguously excludes businesses that buy produce from its

4

regulations as long as they purchase less than $230,000 worth of produce annually, and does not state that businesses must sell the food in an unaltered form to be free of PACA's regulations. The Court declines to insert such a limitation where Congress clearly did not.

Two other district courts have confronted this exact question and have reached the same result. In *J. Ambrogi Food Distribution v. Top Dog America's Bar & Grille of PA, Inc.*, No. Civ. 05-337, 2005 WL 1655891 (E.D. Pa. July 14, 2005), the court succinctly summarized the relevant inquiry as "whether restaurants purchasing *less than* $230,000 of perishable agricultural products per year are 'dealers'" and continued that "[t]his question necessarily depends upon whether a restaurant that purchases wholesale or jobbing quantities of produce can be considered to buy such commodities 'solely for sale at retail,' and thereby fall under the exemption provided pursuant to Section 499a(b)(6)(B)." *Id.* at *3. After reviewing the Third Circuit's decision in *Magic Restaurants*, the court concluded that "our Court of Appeals appears to instruct that restaurants that purchase less than $230,000 annually in perishable agricultural products are not 'dealers.'" *Id.* at *5. In *Bix Produce Co. v. Bilimbi Bay Minn., LLC*, No. 05-1914, 2006 WL 2067837 (D. Minn. July 24, 2006), the plaintiff made the exact same argument that Fresh Pick is making in this case, that "[defendant] does not fall into exception (B) because it sells prepared food, not perishable agricultural commodities, at retail." *Id.* at *5. The court rejected this argument, holding that the Eighth Circuit's decision in *In re Old Fashioned* "counsels against such an interpretation." *Id.* Instead, "the amount of perishable agricultural commodities a restaurant purchases per year must be considered when determining whether a restaurant is a dealer under PACA and [] only restaurants purchasing more than $230,000 a year fall within the parameters of PACA." *Id.*

Although the Second Circuit has not interpreted the relevant provision of PACA, the Court finds the decisions in *J. Ambrogi* and *Bix* persuasive. Under the plain meaning of the statute, restaurants are exempt from the definition of dealer if they purchase less than $230,000 of produce in any calendar year, regardless of whether they sell the produce in unaltered form or use the produce to make food. Because it is undisputed that Dover has never purchased more than $230,000 of produce in a year, defendants are not subject to the statute's regulations. Accordingly, the federal claims are dismissed.

B.  State Law Claim

Plaintiff's complaint also asserts a cause of action under New York State law. Having determined that the federal claim does not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's

5

state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claim given the absence of any federal claims that survive summary judgment and dismisses plaintiff's state claim without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of defendants as to the federal claims, and denies summary judgment to plaintiff as to the federal claims. The Court declines to exercise supplemental jurisdiction over the state law claim, and dismisses it without prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED

_____

JOSEPH F. BIANCO
United States District Judge

Dated:   September 5, 2013
         Central Islip, NY

Plaintiff is represented by Bruce Levinson, Gregory Adam Brown, and Richard Roman Shum, Law Offices of Bruce Levinson, 747 Third Avenue, New York, NY 10017. Defendants are represented by Brian James Hufnagel, Forchelli Curto Deegan Schwartz Mineo Cohn & Terrana, LLP, 333 Earle Ovington Blvd, Suite 1010, Uniondale, NY 11553.